FRUGE, Judge ad hoc.
This is a suit under the Workmen’s Compensation Law of Louisiana, Act No. 20 of 1914, as amended, in which plaintiff, who sustained an injury to the little finger of his right hand, is seeking to recover permanent and total disability compensation from the defendant, his employer.
The facts as to how the injury occurred are well established and are as follows:
On August 21, 1947, at approximately 11:50 a.m. the plaintiff, an ironworker and employee of defendant, after purchasing a bottle of milk, was walking up some stairs with the bottle of milk which he intended to drink with his lunch. While walking up said stairs he slipped and cut his small finger of his right hand severing the tendons of this finger. He was given first aid treatment and then was sent to Dr. T. Jeff McHugh for treatment. Dr. Mc-Hugh first tried to tie the tendons with silk but it did not hold, and he subsequently tried a graft but this, likewise, failed. The little finger on his right hand was thereby left in a perfectly flexed position.
At the first trial of this matter the District Court applied the doctrine in the case of Leday v. Lake Charles Pipe & Supply Company, La.App., 185 So. 655, and rendered judgment in favor of plaintiff decreeing that plaintiff was totally and permanently disabled, and that compensation *215 was to be paid to plaintiff on the date the judgment became executory and further ordering the plaintiff to submit to an operation for the amputation of the little finger by a doctor of his own choosing at the expense of the defendant; and on the refusal of the defendant to submit to such an operation within said time and without reasonable grounds for such refusal, then compensation to cease after the expiration of said period of thirty days and the defendant given the right to show that by reason of said operation or otherwise the plaintiff’s disability no longer exists and compensation ceases. Thereafter on May 14, 1949, plaintiff selected Doctor J. Willard Dowell of Baton Rouge, Louisiana, and had the little finger amputated. Then, in accordance with the first ruling of the Trial Judge, the defendant ordered the plaintiff to show cause why the first judgment should not be modified on the grounds that the incapacity and disability of the said plaintiff had ceased. The rule came up for trial and on the 10th day of October, 1949, judgment was rendered by the Trial Court finding that the plaintiff was relieved of any disability and that no further compensation was due plaintiff.
At the first trial of this matter numerous- orthopedic specialists testified that an amputation of the finger would relieve plaintiff of his disability and incapacity. After plaintiff’s finger had been amputated by Dr. J. Willard Dowell, a physician of plaintiff’s own choosing, Dr. Dowell testified that plaintiff was able to do the work that he had been accustomed to doing and stated that the hand had healed perfectly ■with the exception of one small adherence scar. Doctors T. Jeff McHugh and Charles McVea, who had examined plaintiff before the first trial on this matter also opinioned that the amputation of plaintiff’s finger would relieve any disability insofar as performing the duties of an ironworker. After the amputation of the finger by Dr. Dowell they testified that the amputation had been a very successful one, that the hand had healed completely and that the pláintiff was able to flex and extend all of the remaining fingers. They further testified that plaintiff had the full range of motion in' all of the remaining fingers and stated that plaintiff was able to perform the duties of an ironworker.
In the Lower Court many men were called to testify, who had disabled members of the hand. A Mr. Henry B. Nesom testified that he was employed as an iron-worker and had lost his thumb right down to the hand; that he was employed as an ironworker and did all sorts of heavy work including climbing, rigging and -other work.
A Mr. Charles H. Cassle who had lost his index finger when a child was presently following the employment as an iron-worker.
A Mr. Walker Roy Ellis, who had lost half of a ring finger and had two -fingers partially smashed, which were partially stiff, held an ironworker’s card, and a Mr. Wilton R. Davis, who had some crippled fingers on both hands and only had about three-fourths of the grip in his left hand was an ironworker who was following that occupation satisfactorily.
Taking into account the duties of an ironworker, as described by the plaintiff himself, and his witnesses, as well as the testimony of the other ironworkers suffering much greater disability than the loss of a little finger, there is an overwhelming preponderance of evidence that the plaintiff can perform his duties as an ironworker.
All material testimony in the case leads to the conclusion that the amputation of plaintiff’s finger was successfully performed. That he has had a perfect recovery and all he is left with is the loss of a finger for which he has been paid all the compensation he is entitled to under the law.
Plaintiff has perfected an appeal from the first judgment based on that portion of the judgment decreeing that the compensation should commence when the judgment became executory, alleging that Act No. 20-of 1914, as amended, requires the payment of compensation from the date the disability begins. The facts reveal that plaintiff remained in the employ -of the defendant after the accident occurred until March S, 1948, and was paid full wages *216 in lieu of compensation. Thereafter the first judgment was rendered on the 30th day of March, 1949, and defendant paid compensation to plaintiff at the rate of Twenty ($20.00) Dollars per week from April 11, 1949, the date the said judgment became executory until judgment was rendered on the second trial of the matter. Plaintiff actually received more compensation than that was due under the Workmen’s Compensation Law. Therefore the judgment appealed from is, in our opinion, correct and is affirmed.